DIAMOND FRUIT GROWERS, *Petitioner,*

*v.*

EMPLOYMENT DIVISION et al, *Respondents.*

(No. 76-AB-317, CA 6272)

553 P2d 1080

*Donald W. Hull,* Hood River, argued the cause for petitioner. With him on the brief were Annala, Lockwood, Carey & Hull, Hood River.

No appearance for respondents.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Petitioner-employer discharged claimant for theft of petitioner's property during the course of his employment. The Employment Division initially determined that claimant was disqualified from unemployment benefits because he was discharged as a result of theft and misconduct in connection with his work. Claimant requested a hearing and the referee ruled in favor of the employer on both counts. The Employment Appeals Board reversed on both counts.

The Employment Appeals Board erred in reversing the referee's finding that claimant was discharged for theft in connection with his work. ORS 657.176(4)(a) provides:

"If the authorized representative designated by the administrator finds an individual was discharged for misconduct because of the commission of a felony in connection with his work, or because of theft in connection with his work, all benefit rights based on wages paid prior to the date of such discharge shall be canceled; provided * * *:

"(a) The individual has admitted his commission of the felony or theft to an authorized representative of the administrator."

The pertinent findings of fact made and conclusions of law reached by the referee are correct and based upon uncontroverted evidence:

"FINDINGS OF FACT: (1) Claimant worked for the employer as a truck loader * * *. (4) The employer had a long-standing policy which forbade the giving away of any of its goods or products. (5) Claimant was thoroughly familiar with this policy. (6) The employer also had a significant problem with truckers who would pilfer company fruit not covered by their hauling contract.

"(7) On or about November 24, 1975, a trucker asked claimant for some fruit to pilfer. (8) Claimant referred the trucker to several cases of fruit which had been destined for the garbage dump as unsuitable for human use. (9) In this fashion, claimant hoped to dissuade the trucker from

possibly stealing better fruit. (10) The trucker took the proffered fruit and left. (11) For this transaction claimant was discharged.

"(12) The employer typically tried to block the flow of such unsuitable fruit into public hands because it feared that illness and legal liability might result if the unsuitable fruit were consumed. (13) Although this fruit was unsafe for human consumption, it had value as animal feed.

"* * * * *

"CONCLUSION: AS TO THE THEFT ISSUE: Claimant was discharged for work-connected theft and his wage credits are subject to cancellation. Despite his apparently innocent intentions, his actions satisfied the State's statutory definition of theft according to the following specifications. (*See* ORS 164.005 and 164.015).

"ORS 164.015 requires the presence of an intent to deprive before theft will exist. According to one of the definitions in ORS 164.005, 'deprive' can mean to

"(6) Dispose of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property.

"When claimant permitted the trucker to take the fruit, he exhibited an intent to deprive.

"A theft under ORS 164.015 exists when a person '. . . appropriates property from an owner. . .'. ORS 164.005 defines 'appropriate' as '. . . to aid a third person to exercise control over property of another, permanently, . . .' or to 'Dispose of the property of another for the benefit of oneself or a third person.'

"When claimant permitted the trucker to take the fruit, he appropriated it within the meaning of the statute.

"Finally, the fruit had sufficient value within the meaning of the statute to be property capable of being stolen. Although it may have been of no use for human consumption, it had a use and hence a value as animal feed.[1]

"* * * * *."

Claimant may have been well-intentioned. The referee who saw and heard him testify concluded that

---

[1] The uncontroverted testimony was that the value of the fruit for animal feed was in excess of $50.

he was. However, claimant admitted that it was his intent to permanently dispose of his employer's property, not only without permission, but with knowledge that such act was contrary to direct orders he had received from his employer. This constituted the admission required by ORS 657.176(4)(a).[2] The relevant statutes do not give the Employment Appeals Board the power to sanction claimant's behavior on an "end-justifies-the-means" theory, or any other theory.

In view of the result we have reached on this issue, it is not necessary to consider whether claimant's act, if it had not constituted theft, would have constituted such misconduct as would have disqualified him from receipt of unemployment benefits under ORS 657.176(2)(a).

Reversed.

**THORNTON, J.,** dissenting.

I cannot agree with the reasoning by which the majority reaches the conclusion that claimant admitted facts which legally constituted theft, and that this requires claimant's disqualification under ORS 657.176(4)(a).

The referee found that the canned goods that claimant admitted he gave away
"* * * had been destined for the garbage dump. * * *"

The only direct testimony concerning the source and condition of the canned goods was from the claimant himself. He testified that all the cans he had obtained from the employer's cannery were "throw-aways." In my view this could not constitute the crime of theft as

---

[2]Contrary to what may be an implication in the referee's opinion, neither the referee nor the Appeals Board is authorized to determine whether, as a factual matter, an unemployment compensation claimant has committed theft. Before commission of theft can have any impact on unemployment compensation, it must be admitted or have resulted in conviction. ORS 657.176(4). Therefore, the referee and Appeals Board should have limited their consideration to whether, as a factual matter, the claimant's various statements constituted an admission of theft.

defined in ORS 164.015 et seq. How could claimant (a) have the necessary criminal intent and (b) commit theft of property which the evidence was that his employer had already discarded? The testimony as to its possible value was conflicting and at best conjectural. There was no testimony that any discarded canned fruit had ever been sold for a stated price.

As to the charge of "misconduct" under ORS 657.176(2)(a) for violating the company rule against giving away company property, there is evidence in the record which supports this conclusion of the Board that the employer was aware that this claimant and other employes were violating the company rule prohibiting employes from removing damaged or spoiled canned goods, and had, until now, taken no action against anyone to enforce the rule.

A similar rule-violation issue was involved in *Georgia-Pacific v. Employment Div.,* 21 Or App 135, 533 P2d 829 (1975). In that case Georgia-Pacific, the employer, had a seldom-if-ever enforced company rule which provided that any employe guilty of fighting on company premises would be discharged. Petitioner was fired after having engaged in a minor on-the-job scuffle with a fellow employe. This court held that the Employment Division and the Board did not err in ruling that claimant's actions did not constitute "misconduct" and in allowing benefits to claimant notwithstanding.

I agree with the Board that on this record it was error to deny benefits to this claimant.